UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

RONALD DREYER,                )
                              )
      Plaintiff,             )
                              )
  v.                          )  Case No. 19-cv-1265-JES-JEH
                              )
BRYAN McCALL,                 )
                              )
      Defendant.             )

# ORDER AND OPINION

This matter is now before the Court on Defendant's Motion (Doc. 29) for Summary Judgment, Plaintiff's Response (Doc. 31), and Defendant's Reply (Doc. 34). For the reasons set forth below, Defendant's Motion (Doc. 29) is granted.

## BACKGROUND

The following facts are undisputed by the parties unless otherwise noted. On August 11, 2018, Bryan McCall was employed as a patrol deputy for the McLean County Sheriff's Department. On August 11, 2018 just after midnight, McCall was conducting a routine traffic stop in a residential area near the intersection of North Lee Street and West Empire Street in Bloomington, Illinois. After completing the unrelated traffic stop, McCall pulled up to the curb of the southbound lane of Lee Street to classify information and end the recording from the traffic stop. McCall was sitting in his patrol vehicle when he observed a truck (which McCall would later learn was being driven by Plaintiff) pass his vehicle closely in the southbound lane of Lee Street while honking the vehicle's horn.[1] McCall perceived the driver's conduct in driving

---

[1] Plaintiff lists this statement as disputed because, "[a]s Mr. Dreyer was attempting to go around the officer, he pulled out in front of Mr. Dreyer and dipped back in; that's when Mr. Dreyer honked his horn." Doc. 31 at 1.

1

the truck close to his patrol vehicle and honking the horn to be very unusual and out of the ordinary behavior for the average motorist when passing a patrol vehicle. Doc. 29 at 2.

Plaintiff claims McCall pulled his patrol vehicle out in Lee Street without signaling or yielding the right of way and that Plaintiff had to swerve to avoid colliding with McCall's patrol vehicle. Plaintiff admits he honked his horn at McCall when passing. After observing Plaintiff's truck pass the patrol vehicle, McCall pulled out on southbound Lee Street to catch up to Plaintiff's truck. At this time, McCall had not activated his emergency lights. While Plaintiff's truck was still ahead of McCall's patrol vehicle, Plaintiff brought his truck to an abrupt stop in the middle of the roadway approximately 30 feet from the nearest stop sign before the intersection of Lee Street and Locust Street and activated his hazards. McCall perceived the driver's conduct in stopping his truck in the middle of the roadway as out of the ordinary and thought there may be something wrong with the driver or that the truck had mechanical problems. McCall proceeded to stop his patrol vehicle behind Plaintiff's truck, grab his police radio and begin to let dispatch know where he was and what he was doing when he observed Plaintiff open the driver's side door of the truck, get out and begin approaching the patrol vehicle while pointing his finger and yelling. *Id*. at 3.

There was approximately 15 feet between the back of Plaintiff's truck and McCall's patrol vehicle. Plaintiff was angry and agitated as he approached McCall's patrol vehicle yelling obscenities including, "What the fuck is your problem, motherfucker?"[2] McCall quickly exited his patrol vehicle and observed what appeared to be an unknown item in Plaintiff's left hand.

---

Because the basis for the stop is no longer at issue (*see id*. at 3), this dispute is not material to whether Defendant used excessive force on Plaintiff.

[2] Plaintiff lists this statement as disputed but does not explain the basis for the dispute. Doc. 31 at 1. The Court therefore considers the statement undisputed.

McCall then instructed Plaintiff to stop walking towards him and to show his hands.[3] Plaintiff fails to comply with McCall's instructions, stopping only momentarily, and continues yelling at McCall and then turns around and walks back towards his truck.[4] As Plaintiff is walking back towards his truck, McCall instructs him again to stop walking and show him his hands.[5] Plaintiff disregards McCall's commands, continues walking back to his truck and yells "fuck you" to McCall. At this point, McCall believes it is clear that Plaintiff is not going to listen to any commands and quickly closes the distance between he and Plaintiff as McCall does not know what Plaintiff intends to do once he reaches the truck, i.e. whether he is going to drive away or possibly retrieve a weapon from the truck. *Id*. at 4.

As Plaintiff is getting back inside his truck and trying to close the driver's side door, McCall holds his hand against it in hopes of preventing Plaintiff from shutting it. McCall's attempts to prevent Plaintiff from shutting the door are not successful and Plaintiff is able pull the door shut and lock it with the window remaining rolled down. McCall continues to instruct Plaintiff to get out of the truck, but Plaintiff disregards his order and tells McCall "fuck you." Defendant asserts McCall observed Plaintiff reaching for something on the floorboard of the truck; Plaintiff disputes this and asserts his hands were outside the window. McCall then drew his Taser, aimed it at Plaintiff, and instructed him to place his hands on the steering wheel. Plaintiff proceeds to place his hands on the steering wheel but refuses to exit the vehicle, instead telling McCall he would not exit the vehicle until McCall's shift supervisor showed up. McCall instructs Plaintiff several more times to get out of the truck, but Plaintiff persists in his refusal to

---

[3] Plaintiff disputed this fact on the basis that Plaintiff does not recall being told by the officer to stop approaching him. However, a Plaintiff's lack of recollection is insufficient to create a material factual dispute.

[4] Plaintiff lists this statement as undisputed and material, but then goes on to list it as disputed and immaterial because "fails to comply" is a conclusion. Because Plaintiff does not properly dispute this statement, the Court considers it undisputed.

[5] Plaintiff disputed this fact on the basis that Plaintiff does not recall being told by the officer to stop walking. However, a Plaintiff's lack of recollection is insufficient to create a material factual dispute.

3

do so. According to Defendant, when McCall first aimed the Taser at Plaintiff, he pointed it at Plaintiff's chest and shoulder area. After Plaintiff placed his hands on the steering wheel, McCall brought the Taser aim off him a bit. According to Plaintiff, McCall aimed the Taser at his head, face, and neck. *Id*. at 5.

At this point, McCall alerts dispatch that he has an individual at Taser point and asks to expedite a response to the scene. McLean County patrol deputy Werts arrives first on the scene as back up, approaches Plaintiff's truck and gives verbal commands for Plaintiff to get out of the truck.[6] Plaintiff refuses Werts' commands as well.[7] Deputy Werts then reaches through the driver's side window and unlocks the door while McCall opens the truck door. McCall then grabs Plaintiff's left arm and pulls him from the truck using a straight arm take down—a maneuver to remove someone from a vehicle while causing the least amount of pain.[8] Once on the ground, Plaintiff was handcuffed, mirandized, and walked back to McCall's patrol vehicle for transport to the McLean County Detention Facility without visible injuries. Plaintiff was thereafter charged with a traffic violation for standing/stopping in the roadway and for the misdemeanor offense of resisting/obstructing a law enforcement officer. Plaintiff was found guilty of the resisting/obstructing offense and sentenced to serve two days in jail. *Id*. at 6–7.

Plaintiff has included a number of additional material facts in his Response, but none of them are relevant to the issue before the Court: whether Defendant used excessive force in arresting Plaintiff. Doc. 31 at 1–2. This order follows.

---

[6] Plaintiff disputes this statement because he does not recall any events between the Taser being pointed at him and being pulled out of the vehicle. Doc. 31 at 1. Again, a lack of recollection is insufficient to create a material factual dispute at summary judgment.
[7] Again, Plaintiff's dispute of this statement is based on his lack of recollection. *Id*.
[8] Plaintiff lists this statement as disputed, stating "Mr. Dreyer was pulled out of the vehicle and thrown to the ground." *Id*. The Court is unable to discern the unstated basis for the dispute, and thus considers the statement undisputed.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50. Thus, in order to overcome the undisputed facts set forth in a defendant's motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

**DISCUSSION**

Defendant moves for summary judgment in his favor, arguing (1) Plaintiff's unlawful arrest claim is barred by *Heck v. Humphrey*, and (2) McCall did not employ excessive force in arresting Plaintiff. Doc. 29 at 8–19. In his Response, Plaintiff concedes summary judgment is appropriate in Defendant's favor on the unlawful arrest claim. Doc. 31 at 3. Accordingly, the sole issue before the Court is whether Defendant is entitled to summary judgment on Plaintiff's excessive force claim.

**Excessive Force**

Plaintiff alleges Defendant McCall[9] used excessive force in arresting him by pointing his Taser at Plaintiff's head and neck and by pulling him from the vehicle and taking him to the ground. Doc. 31 at 3. "Excessive-force claims in the context of an arrest are reviewed under the Fourth Amendment's objective-reasonableness standard." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861–62 (7th Cir. 2010) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir. 2005)). Under this standard, courts must examine the "totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing governmental interests at stake." *Id.* (citing *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000)). Thus, "[t]he nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (citing *Graham,* 490 U.S. at 396,

---

[9] Plaintiff makes reference to the lawfulness of Deputy Werts' conduct at times, but he is not a defendant in this case. Doc. 31 at 3.

109). The reasonableness of an officer's actions are viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]" *Id.*

In his Motion, Defendant argues that pointing a Taser at Plaintiff and removing him from the vehicle were reasonable actions under the circumstances of the arrest. Doc. 29 at 13. Specifically, Defendant asserts,

> Plaintiff continuously gave McCall reasons to have a heightened level of concern for his own safety. Plaintiff was willfully defiant and showed continued disregard for McCall's lawful authority. McCall reasonably believed that Plaintiff had already showed disregard for McCall's safety, and made statements and engaged in actions that McCall reasonably believed to be veiled threats. McCall also reasonably believed that Plaintiff may have access to a weapon in his truck and Plaintiff was not complying with McCall's repeated commands. These are precisely the sort of "tense, uncertain, and rapidly evolving" circumstances to which the Supreme Court referred in *Graham v. Connor*. In light of the tense, uncertain, and rapidly evolving circumstances that McCall confronted, it was objectively reasonable for McCall to display and point his Taser at Plaintiff.

Doc. 29 at 13–14.

In his Response, Plaintiff argues that,

> Although [Defendant] denies aiming the taser at the Plaintiff's head, neck or face, contending it was aimed in the general area of the Plaintiff's chest and shoulders, the video clearly demonstrates that the Plaintiff's head, face and neck were within the target area had the Deputy fired the taser. Given the fact Plaintiff was seated in his truck, the Plaintiff's head, face and neck were within the area of where the taser was aimed; it was unavoidably so.

Doc. 31 at 3. In support of his argument, Plaintiff relies on *Abbott v. Sangamon County*, 705 F.3d 706, 732 (7th Cir. 2013). There, the Seventh Circuit held "that it was clearly established on June 25, 2007, that it is unlawful to deploy a taser in dart mode against a nonviolent misdemeanant who had just been tased in dart mode and made no movement when, after the first tasing, the officer instructed her to turn over. Prior to 2007, it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 732 (7th Cir. 2013).

7

Viewed in the light most favorable to Plaintiff and resolving all factual disputes in his favor, the evidence shows Plaintiff belligerently yelling at McCall and appearing agitated while approaching him with an unknown object in his hands, initially refusing to obey McCall's commands to stop approaching and raise his hands, struggling with McCall to shut himself inside his vehicle against McCall's commands, and then refusing to exit his vehicle despite numerous directives to do so. Regardless of where McCall pointed the Taser[10] or whether Plaintiff's hands were on the steering wheel instead of actively reaching for something, McCall's conduct of pointing a Taser at Plaintiff but not pulling the trigger was reasonable under the circumstances. In short, McCall used the Taser to ensure Plaintiff's continued detention while backup arrived; McCall had a legitimate interest in protecting himself from the possibility that the agitated individual refusing his commands would reach for a weapon to harm McCall or others, and to prevent Plaintiff from fleeing. Even if Plaintiff's hands were indeed on the steering wheel the entire time, McCall could reasonably believe that Plaintiff could reach for a weapon faster than he could unholster and aim his. And this case is nowhere near the circumstances addressed in *Abbott*, since that case involved the *use* of Tasers, not the mere pointing of Tasers. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 728 (7th Cir. 2013) ("Indeed, it is undisputed that Sweeney used the taser until Travis stopped fighting but did not use it thereafter, suggesting that Sweeney used no more force than was necessary to gain control of the actively resisting Travis."). In fact, Plaintiff is unable to point to any case where the mere pointing of a Taser was found to amount to excessive force.

---

[10] Though the Court notes Plaintiff appears to concede McCall had no choice but to point the Taser at his head. Doc. 31 at 3 ("Given the fact Plaintiff was seated in his truck, the Plaintiff's head, face and neck were within the area of where the taser was aimed; it was unavoidably so.").

Plaintiff also argues the amount of force used to arrest Plaintiff was excessive. On this subject, Plaintiff argues, "[a]t the time Plaintiff was forcefully removed from the vehicle, he was seated with his hands on the steering wheel. All he did was not exit the vehicle before the Defendant, with the assistance of a second officer, forcefully removed him from the vehicle." Doc. 31 at 4. There are at least two problems with this argument. First, officers conducting a lawful traffic stop may demand the driver exit the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). In contrast, Plaintiff has not directed the Court to any case law, statute, or constitutional provision conferring a right upon traffic stop detainee to speak with the officer's supervisor prior to complying with the officer's lawful orders. Second, Plaintiff's argument completely fails to discuss the "excessive" aspect of his excessive force claim. Rather, his grievance seems to be that he was arrested at all. With the benefit of viewing the video exhibits in the record, it is abundantly clear in this case that McCall and his fellow officer used only the amount of force reasonably necessary to remove Plaintiff from his vehicle.

Finally, even if McCall's use of force could be deemed excessive by a reasonably jury, McCall would be entitled to qualified immunity under the circumstances presented here.

> Qualified immunity, in effect, affords enhanced deference to officers' on-scene judgments about the level of necessary force. This is so because, even if the plaintiffs demonstrate that excessive force was used, they must further establish that it was objectively unreasonable for the officer to believe that the force was lawful—i.e., they must demonstrate that the right to be free from the particular use of force under the relevant circumstances was "clearly established." A constitutional right is "clearly established" for qualified-immunity purposes where "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." In other words, existing precedent must have placed the constitutional question beyond debate.

*Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 725 (7th Cir. 2013) (cleaned up). Here, Plaintiff is unable to point to clearly established precedent showing that the mere pointing of a Taser amounts to excessive force. Further, Plaintiff's reliance on *Morfin v. City of E. Chicago* is

misplaced, as in that case "Mr. Morfin did not resist arrest in any way prior to the officers' use of excessive force." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003). Here, unlike in *Morfin*, Plaintiff had actively resisted arrest, including struggling with McCall to close his vehicle's door. Thus, even if McCall's use of force was excessive (it clearly was not), McCall would still be entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 29) for Summary Judgment is granted. The Clerk is directed to close the case.

Signed on this 16th day of August, 2021.

s/ James E. Shadid<br>
James E. Shadid<br>
United States District Judge